PAUL PARKER,

                        Plaintiff,

v.                                                       Case No. 20-cv-97-pp

C.O. APEL, *et al.*,

                        Defendants.

---

## ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A

---

Paul Parker, an inmate at the Dodge County Detention Facility who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens the complaint, dkt. no. 1.

### I. Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was a prisoner when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On February 19, 2020, the court ordered the plaintiff to pay an initial partial filing fee of $86.17. Dkt. No. 7. The court received that fee on March 3, 2020. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.    Screening the Complaint**

    A.    <u>Federal Screening Standard</u>

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See <u>Cesal v. Moats</u>, 851 F.3d 714, 720 (7th Cir. 2017) (citing <u>Booker-El v. Superintendent, Ind. State Prison</u>, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the

2

Case 2:20-cv-00097-PP-WED   Filed 10/28/20   Page 2 of 13   Document 8

plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  The Plaintiff's Allegations

The plaintiff names as defendants people who he alleges worked at the Dodge County Detention Facility (DCDF) at the time of the events he describes: Correctional Officers Apel and Kuehl, Nurses Tammy and Jaysek,[1] Supervisor Schwartz, Jail Administrator Brugger, Deputy Jail Administrator Hundt and Doctor Godiwalla. Dkt. No. 1 at 1.

The plaintiff alleges that he was shot eight times (presumably in the past), which resulted in permanent disruption of his nervous system. Id. at 3. He explains that he has several damaged discs in his spinal cord, which is why,

---

[1] The plaintiff refers to this defendant as "Jaysek" in the caption of his complaint but as "Jatyek" in two places in the body of the complaint. Dkt. No. 1 at 1, 3. The court assumes the two spellings refer to the same person and will use the spelling from the caption.

3

four months before the events he describes, medical had approved him having a second mattress. Id.

The plaintiff alleges that on July 18, 2019, while he was housed in Pod A/section 1 at DCDF on a U.S. Marshal hold, he was authorized a second mattress for medical conditions. Dkt. No. 1 at 2. He says that Apel and Kuehl had attempted to take the second mattress "previously on different occasions and could not because it was approved on file by medical." Id. at 2.

The plaintiff asserts that on November 20, 2019, Apel and Kuehl were working second shift together on Pod A/section 1. Id. He says that they "singled [him] out treating [him] with cruel and unusual punishment, unconcerned if [he] suffered in pain, by not considering [his] documented medical history," noting that medical had approved the second mattress to "mitigate [his] back pain." Id. at 2-3. The plaintiff asserts that Apel and Kuehl knew that taking the second mattress would intensify his pain, "leaving [him] in unbearable and excruciating pain." Id. at 3.

The same day—November 20, 2019—the plaintiff wrote a grievance "stating [his] issue." Id. He says that supervisor Schwartz denied the grievance "without being seen by him, a doctor, a nurse or viewing [the plaintiff's] file to verify [his] medical need." Id. He says that all his grievances and requests that he wrote after that were "answered with deliberate indifference" by Jaysek, Nurse Tammy, Schwartz, Hundt and Brugger. Id.

The plaintiff alleges that "[a]fter complaining, being denied, suffering in excruciating pain, being treated unfairly then [sic] all other inmates, and not

4

being able to sleep properly from a chronic pain disorder," he was seen by a nurse provider on December 5, 2019. Id. at 3-4. He says that he explained that his chronic pain disorder pain level had increased since the second mattress was taken. Id. at 4. The nurse provider told the plaintiff that he would have to be seen by Dr. Godiwalla to get the second mattress back. Id. He says that the nurse provider understood his medical condition, took him off Naproxen and prescribed him 30 mg of Duloxetine and 25/50 mg. of Indomethacin. Id.

The plaintiff indicates that on December 9, 2019, he wrote to medical and told them that the medication was giving him side effects—unusual bleeding, difficulty in urinating, "tired feelings," dry mouth, painful headaches, drowsiness, dizziness, difficulty breathing, stomach pain and trouble sleeping. Id. He asked to be taken off the medication and to see a doctor. Id. On December 30, 2019, the plaintiff was seen by Godiwalla and Nurse Tammy to explain his medical issue, how the medication he was prescribed wasn't working for his pain and how his pain level had increased since Apel and Kuehl confiscated his mattress. Id. He alleges that Godiwalla said that there was nothing that she could do and there was nothing in the plaintiff's file to verify that he was shot, that a bullet was removed, "arthritis, muscle problems, headaches, or high blood pressure." Id. at 4-5. The plaintiff alleges, however, that "there is proof on file on [his] medical History Physical Assessment form." Id. at 5. The plaintiff says that Nurse Tammy told him, "[Y]ou complain to[o] much, request after request is not gonna change nothing." Id. He avers that Nurse Tammy said that his request slips were "just sitting on [her] desk," that

his pain was "not painful," that he did not need a second mattress and that he didn't need to be moved to a lower level floor. Id.

The plaintiff alleges that this situation has caused him "unwanted feelings of extreme anxiety, emotional distress and intensified physical pain." Id. He says that he was repeatedly treated inhumanely and suffered mental, physical and emotional pain. Id. He contends that he pleaded with medical staff and jail supervisors to rectify the issue, but that their responses were "harsh and deliberately indifference [sic]." Id. He says he provided evidence of his medical issues and still was neglected, which caused issues to intensify. Id. at 5-6. He seeks monetary damages. Id. at 5, 7.

C. Analysis

The plaintiff does not say whether he was a pretrial detainee or a convicted prisoner at the time of the alleged events. If the plaintiff was a pretrial detainee, his claims arise under the Fourteenth Amendment. See Miranda v. Cty. of Lake, 900 F.3d 335, 352 (7th Cir. 2018) (citing Kingsley v. Hendrickson, 135 S. Ct. 2466, 2475 (2015)). Under the Fourteenth Amendment, the plaintiff must show that that the defendants acted "with purposeful, knowing, or reckless disregard of the consequences" of their actions. Id., 900 F.3d at 354. The detainee must show only that the medical care he received, or the denial of that medical care, was objectively unreasonable; he does not need to show that any defendant was subjectively aware that the medical treatment or denial of treatment was unreasonable. Id. (citing Kingsley, 135 S. Ct. 2466).

6

If the plaintiff was a convicted inmate, his same claims would arise under the Eighth Amendment, which prohibits cruel and unusual punishments. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). An Eighth Amendment claim has both objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the objective component, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm." Id. The subjective component of an Eighth Amendment violation requires a prisoner to demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." Id. A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015) (citing Farmer, 511 U.S. at 837). To state a valid Eighth Amendment claim alleging inadequate medical treatment, the inmate must allege both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (citing Farmer, 511 U.S. at 834).

Under either standard, the plaintiff has stated a claim against Officers Apel and Kuehl. The plaintiff alleges that the officers confiscated his second mattress even though they knew that he was medically approved to have one and even though they knew that if he didn't have the second mattress, he would suffer extreme pain. The plaintiff alleges that their actions were unreasonable, purposeful and unrelated to a legitimate, non-punitive purpose;

7

if true, those actions would violate the Fourteenth Amendment. Under the Eighth Amendment standard, the plaintiff's allegation that he suffered severe pain without the mattress satisfies the objective component. His allegation that the officers knew their actions would cause or increase the plaintiff's pain satisfies the subjective component. The plaintiff may proceed on his deliberate indifference claim against Officers Apel and Kuehl.

The plaintiff alleges that defendants Jaysek, Nurse Tammy, Schwartz, Hundt and Brugger improperly handled his grievances. There is no inherent constitutional right to a prison grievance system. Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996). It is possible for an inmate to state a claim for deliberate indifference against a grievance complaint examiner who does not do his or her job properly and leaves "prisoners to face risks that could be averted by faithful implementation of the grievance machinery." Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009). Examples of improper handling of a grievance could include sending "each grievance to the shredder without reading it" or "interven[ing] to prevent the medical unit from delivering needed care." Id. (citing cases).

The plaintiff alleges that Schwartz improperly denied his grievance without checking his medical file or checking with medical personnel—in other words, he alleges that Schwartz failed to investigate his claims. "[A complaint examiner's] failure to realize the potential gravity of the situation does not amount to deliberate indifference." Greeno v. Daley, 414 F.3d 645, 657 (7th Cir. 2005). And "[r]uling against a prisoner on an administrative complaint

does not cause or contribute to the [constitutional] violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not." George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007). The plaintiff has not stated a claim against Schwartz.

As for Jaysek, Hundt and Brugger, the plaintiff alleges only that the defendants "answered [his complaints] with deliberate indifference." Dkt. No. 1 at 3. That is nothing more than a legal conclusion. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 679. Without factual allegations describing what these defendants did to violate the plaintiff's constitutional rights (other than responding to his complaints), the plaintiff has not stated a claim against them.

As for the plaintiff's claim against Godiwalla, the court will assume for the purposes of screening that the plaintiff's severe pain is an objectively serious medical condition. See Roe v. Elyea, 631 F.3d 843, 857 (7th Cir. 2011) (citing Gayton v. McCoy, 593 F.3d 610, 620 (7th Cir. 2010)). The plaintiff alleges that when he saw Godiwalla for medical treatment, she told him that there was nothing she could do because there was nothing in his medical file to verify his injuries or medical conditions. The plaintiff disagrees, asserting that the information about his medical conditions was readily available on his medical history physical assessment form. It is not clear whether the plaintiff is asserting that Godiwalla saw the information and ignored it, which would state a claim for deliberate indifference, or whether he is asserting that she missed

9

the information in his file, which would state a claim only for negligence. Negligence "is insufficient to establish deliberate indifference." Williams v. Guzman, 346 F. App'x 102, 105 (7th Cir. 2009) (concluding that plaintiff who failed to provide evidence that doctors intentionally disregarded nurse's note in his medical chart could not prevail on deliberate indifference claim). But because the court must liberally construe claims made by plaintiffs who are representing themselves and address any "cogent arguments [the court is] able to discern," Parker v. Four Seasons Hotels, Ltd., 845 F.3d 807, 811 (7th Cir. 2017), the court will assume that the plaintiff is alleging that Godiwalla ignored the information on the medical history assessment form and will allow the plaintiff to proceed on a claim of deliberate indifference against Godiwalla.

Finally, the plaintiff has stated a claim against Nurse Tammy. The plaintiff alleges that Nurse Tammy told him that his many requests were sitting on her desk. She allegedly told the plaintiff that he complained too much and that he wasn't in pain. These allegations, if true, are sufficient to state a claim that Nurse Tammy subjectively was aware of the plaintiff's complaints of significant pain but refused to act on those complaints. The court will allow the plaintiff to proceed on a claim against Nurse Tammy for objective unreasonableness or deliberate indifference to the plaintiff's serious medical needs.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

10

The court **DISMISSES** defendants Supervisor Schwartz, Nurse Jaysek, Jail Administrator Brugger and Deputy Jail Administrator Hundt.

The court **ORDERS** the U.S. Marshals Service to serve a copy of the complaint and this order on Correctional Officers Apel and Kuehl, Nurse Tammy and Dr. Godiwalla under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** defendants Apel, Kuehl, Nurse Tammy and Godiwalla to file a responsive pleading to the complaint.

The court **ORDERS** that the agency that has custody of the plaintiff shall collect from his institution trust account the **$263.83** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the

transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

The court will issue a separate order **REFERRING** this case to Magistrate Judge William E. Duffin for pretrial proceedings.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders

or other information not being timely delivered, which could affect the legal rights of the parties.

Dated in Milwaukee, Wisconsin, this 28th day of October, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**