UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

PAUL PARKER,

      Plaintiff,

      v.                            Case No. 20-cv-97-pp

CO APEL, *et al.*,

      Defendants.

---

**ORDER GRANTING DEFENDANTS' UNOPPOSED MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 29, 36) AND DISMISSING CASE, DENYING AS MOOT DEFENDANTS' MOTION TO CONSIDER MOTION FOR SUMMARY JUDGMENT UNOPPOSED OR, IN THE ALTERNATIVE, TO DISMISS FOR FAILURE TO PROSECUTE (DKT. NO. 50)**

---

Plaintiff Paul Parker, who is representing himself, is proceeding under 42 U.S.C. §1983 on claims against correctional officers and medical professionals. The defendants move for summary judgment. Dkt. Nos. 29, 36. The plaintiff has not opposed the motions, despite extensions of time by which to do so. The court finds that the defendants are entitled to judgment as a matter of law and dismisses the case.

**I.    Facts**

    A.    <u>Procedural Background</u>

On January 21, 2020, the plaintiff filed a complaint alleging that Correctional Officer Jodi Apel and Correctional Sergeant Kevin Kuehl (sued as "CO Apel" and "CO Kuehl") took the plaintiff's medically approved second mattress. Dkt. No. 1 at 2–3. He also alleged that several other prison officials disregarded his grievances about the incident and that Dr. Shirley Godiwalla and

Nurse Tamra Wollin (sued as "Doctor Godiwalla" and "Nurse Tammy") failed to provide adequate medical treatment for his back pain. Id. at 3–5. The court screened his complaint under 28 U.S.C. §1915A and allowed him to proceed on claims of deliberate indifference against the officers and the medical professionals. Dkt. No. 8.

After screening the complaint, the court referred the case to Magistrate Judge William E. Duffin for pretrial case management. Dkt. No. 9. Judge Duffin entered a scheduling order setting a discovery deadline of May 28, 2021 and a June 28, 2021 deadline for filing dispositive motions. Dkt. No. 25. A quiet pretrial period passed during which neither party filed any motions or requests. On January 1, 2021, the case was returned to this court for case management. Dkt. Entry of 1/01/2021. On April 23, 2021, the plaintiff requested additional time to conduct discovery, which the court granted. Dkt. Nos. 27, 28. The court extended the discovery deadline to July 27, 2021 and extended the deadline for dispositive motions to August 27, 2021. Dkt. No. 28.

At the August 27, 2021 deadline, defendants Apel and Kuehl moved for summary judgment, dkt. no. 29, as did Dr. Godiwalla and Nurse Tammy, dkt. no. 36. The court ordered the plaintiff to respond to the defendants' motions and their proposed findings of fact within thirty days—by September 27, 2021. Dkt. No. 41. On September 15, 2021, the court received from the plaintiff a request for additional time to respond to the motions. Dkt. No. 42. He alleged that prison staff was giving him "the run around" and that the computer on his pod was down. Id. The court granted the motion and ordered the plaintiff to respond by October 27, 2021. Dkt. No. 43. The copy of that order sent to the plaintiff at

2

Dodge County Detention Facility was returned as undeliverable. Dkt. No. 45. On September 30, 2021, the court received another request from the plaintiff for an extension of time to respond to the motions. Dkt. No. 46. He noted that he had been sentenced in his criminal case "by Stadtmueller" and was being held at the Kenosha County Jail. Id. at 1. He asked for additional time to get his papers together, review them and compose his responses. Id. He stated that he had "no control of [his] moving issues" and asked that the case "be placed on hold while [he was] being transfer[r]ed by the feds." Id. at 2.

The court did not stay the case but on October 4, 2021, it granted the plaintiff's request for more time and ordered him to file his responses to the defendants' motions by the end of the day on November 29, 2021; it mailed that order to him at the Kenosha County Jail. Dkt. No. 47. The court also resent the previous order granting the plaintiff's first request for an extension of time to the plaintiff at the Kenosha County Jail. Dkt. No. 45. Neither of those orders were returned to the court as undeliverable.

The November 29, 2021 deadline has passed, and the plaintiff has not responded to the defendants' motions or disputed their proposed findings of fact. Nor has he filed a letter providing any reason why he cannot respond to the motions. The previous orders were sent to the plaintiff at the Kenosha County Jail, and there is no indication on the docket that the orders returned to the court as undeliverable. Id. Although the plaintiff has not notified the court of a new address, he now is in federal custody. The Kenosha County Jail's current inmate search shows that the plaintiff is listed as "Released to Other Agency" on a "Federal Agency Hold" as of October 26, 2021. See http://inmate.kenoshajs.org/

3

NewWorld.InmateInquiry/kenosha/Inmate/Detail/-656850. The Bureau of Prisons' website shows that he is incarcerated at FCI Milan in Milan, Michigan. See https://www.bop.gov/inmateloc/ (BOP Register #17031-089).

The plaintiff noted that Judge J.P. Stadtmueller had sentenced him in his federal criminal case. Dkt. No. 46 at 1. That case is 19-cr-120-JPS-11, the docket for which shows that the plaintiff pleaded guilty to one count on December 13, 2019. See Case No. 19-cr-00120-JPS-11, Dkt. No. 247. Magistrate Judge Duffin recommended that Judge Stadtmueller accept the plea, which Judge Stadtmueller did on January 21, 2020. Dkt. No. 286. Sentencing was delayed many months because of the COVID-19 pandemic. See id., Text Only Order of 3/25/2020. On September 17, 2021, Judge Stadtmueller sentenced the plaintiff to 96 months' imprisonment, and he entered judgment three days later. Id., Dkt. Nos. 484, 488. The plaintiff since has appealed that judgment, and his appeal is pending in the U.S. Court of Appeals for the Seventh Circuit. Id., Dkt. Nos. 491, 495 (Appeal No. 21-2739).

It is the plaintiff's obligation to notify the court when he is moved to a different facility and to provide the court with his new address. The court has twice advised the plaintiff of that obligation. See Dkt. No. 8 at 12–13; Dkt. No. 25 at ¶4. He previously failed to notify the court when he was moved to the Kenosha County Jail. It was only after his move, and after mail sent to him was returned to the court as undeliverable, that the court learned the plaintiff had been transferred to the jail. The plaintiff's transfer to a federal facility does not excuse his obligation to keep this court updated as to his location. Despite his September 20, 2021 sentencing, and subsequent transfer to federal custody, the plaintiff has

4

not notified this court that he moved to a federal facility. The plaintiff's most recent communication was his September 30, 2021 letter explaining that he had been sentenced and was at the Kenosha County Jail. Dkt. No. 46. It also appears that the plaintiff was not transferred from the Kenosha County Jail until over three weeks after the court issued its order giving him a deadline of November 29, 2021 by which to respond to the defendants' motions.

The court finds that the plaintiff was aware of his obligation to notify this court of his location and to update his address when he was transferred to a new facility. The plaintiff failed to meet that obligation and has not provided his current address. The plaintiff should have received the court's October 4 order imposing the November 29, 2021 deadline to respond to the defendants' motions for summary judgment. The plaintiff failed to comply with that order. As it said it would do in the previous order, the court considers the following facts undisputed for purposes of this decision.[1]

B.    Factual Background

The plaintiff was incarcerated at the Dodge County Detention Facility during the relevant events. Dkt. No. 31 at ¶1; Dkt. No. 1 at 2. He was held at Dodge County on a U.S. Marshal hold beginning in July 2019, after being arrested on a federal warrant. Dkt. No. 37 at ¶9 (citing Case No. 19-cr-120, Dkt.

---

[1] On May 13, 2022, the defendants filed a motion asking the court to consider their motion for summary judgment unopposed or, in the alternative, to dismiss for failure to prosecute. Dkt. No. 50. The court will consider the defendants' summary judgment motion unopposed because the plaintiff failed to respond by the November 29, 2021 deadline. The court will deny the defendants' May 13, 2022 motion as unnecessary.

No. 1 at 2). His complaint concerns events that occurred in November and December 2019. Dkt. No. 1 at 2–5.

### 1.  *The Officer Defendants*

Officer Apel has been employed as a correctional officer at Dodge County for approximately twenty years. Dkt. No. 31 at ¶2. Sergeant Kuehl has been employed there for seven years. Id. at ¶3. The court will refer to these officers collectively as "the officers."

On November 20, 2019, the officers were assigned to work as "Rovers," meaning they would assist others in Pod A, where the plaintiff was housed. Id. at ¶4. The officers conducted a security inspection of Pod A, which included inspecting the plaintiff's cell. Id. at ¶5. Officer Apel observed that the plaintiff had two mattresses in his individual cell. Id. at ¶6. According to the officers, incarcerated persons at Dodge County are approved only one mattress unless medical personnel approve a second for an inmate's medical condition. Id. at ¶¶7, 18. Incarcerated persons who are released or transferred, however, sometimes give their mattress to another inmate without officer knowledge or approval. Id. at ¶8. Any approval for a medical device, including a second mattress, would be documented in the inmate's jail file. Id. at ¶19. If an officer has a question about whether an inmate is approved for a medical device, he reviews the jail documentation and contacts jail medical staff for confirmation. Id. at ¶20. Correctional officers do not have the authority to approve a second mattress for an inmate. Id. at ¶21.

Officer Apel asked the plaintiff about his second mattress. Id. at ¶9. The officers then checked the jail management system to see if the plaintiff had been

6

approved a second mattress. Id. The jail's management system would have documented any medical approval for a medical device, including a second mattress. Id. at ¶17. The officers did not find any documentation in the system approving a second mattress for the plaintiff. Id. at ¶¶10, 17. The management system showed that the plaintiff was approved for a second blanket but was not approved for a second mattress. Id. at ¶17. Officer Apel then contacted jail medical personnel to ask if they had approved a second mattress for the plaintiff. Id. at ¶11. Medical staff informed the officers that the plaintiff had been approved only a second blanket and had not been approved a second mattress. Id. at ¶12. Based on that discussion, and the lack of documentation in the jail's management system showing approval of a second mattress, Sergeant Kuehl removed the second mattress from the plaintiff's cell.[2] Id. at ¶13.

The officers swear that in deciding to remove the second mattress from the plaintiff's cell, they relied on the discussion with medical personnel that medical personnel had not approved a second mattress. Dkt. No. 31 at ¶14; Dkt. No. 32 at ¶9; Dkt. No. 33 at ¶6. The officers swear that they were unaware of any information at the time suggesting that the plaintiff had been approved a second mattress or that he needed a second mattress for any reason. Dkt. No. 31 at ¶16; Dkt. No. 32 at ¶10; Dkt. No. 33 at ¶8. They also swear that they were unaware whether the plaintiff would be in pain if they removed the second mattress. Dkt. No. 31 at ¶22; Dkt. No. 32 at ¶10; Dkt. No. 33 at ¶8. They assert that they removed the second mattress only after confirming with medical staff that the

_____

[2] As the court discusses below, the plaintiff was not approved a second mattress until January 6, 2020. Dkt. No. 37 at ¶45; Dkt. No. 39-1 at 40.

plaintiff did not have authorization for a second mattress. Dkt. No. 31 at ¶24; Dkt. No. 32 at ¶11; Dkt. No. 33 at ¶6. They swear that they acted under Dodge County rules and not purposefully or knowingly to harm or punish the plaintiff. Dkt. No. 31 at ¶¶23, 25; Dkt. No. 31 at ¶11; Dkt. No. 33 at ¶9.

      2.    *Medical Defendants*

Both Dr. Godiwalla and Nurse Tammy work at Dodge County. Dkt. No. 37 at ¶2. Dr. Godiwalla is a physician, and Nurse Tammy is a registered nurse. Id. The court will refer to these two defendants collectively as "the medical defendants."

The complaint alleges the plaintiff requested a second mattress in December 2019 to ease pain he suffers from prior gunshot wound injuries, but that the medical defendants denied that request. Id. at ¶5; Dkt. No. 1 at 3. It alleges that a non-defendant nurse practitioner prescribed the plaintiff medication that caused side effects. Dkt. No. 37 at ¶6; Dkt. No. 1 at 4. The plaintiff alleges that he complained about those side effects to the medical defendants. Dkt. No. 37 at ¶6; Dkt. No. 1 at 4. The plaintiff says he had an appointment with the medical defendants on December 30, 2019, after submitting several requests for health services, but the medical defendants allegedly refused to provide him a second mattress because there was no information in his medical records supporting his need for one. Dkt. No. 37 at ¶7; Dkt. No. 8 at 5–6. The court allowed the plaintiff to proceed on claims that the medical defendants "ignored the information on the medical history assessment form" and were deliberately indifferent to his serious medical needs." Dkt. No. 37 at ¶8; Dkt. No. 8 at 10.

When the plaintiff was booked into Dodge County on July 17, 2019, he completed a Medical History and Physical Assessment form. Dkt. No. 37 at ¶11. On that form, he disclosed a gunshot injury to his lower back from 2000 and resulting injuries to his left sciatic nerve, which runs from the hip to toes. Id. at ¶12; Dkt. No. 39-1 at 1–2. He did not state that he was taking any medications for pain but indicated he was taking prescribed medication for chronic high blood pressure. Dkt. No. 37 at ¶13; Dkt. No. 39-1 at 2. Health Services Unit ("HSU") staff completed the form and recommended the plaintiff receive a lower-bunk restriction for "(L) leg [and] hip—shot (7) times." Dkt. No. 37 at ¶14; Dkt. No. 39-1 at 9.

On October 14, 2019, the plaintiff submitted a sick-call request to be seen by HSU staff. Dkt. No. 37 at ¶15; Dkt. No. 39-1 at 10. The plaintiff complained that correctional officers "took [his] blanket that was giv[en] to [him] for [his] leg [be]cause [he] was shot and [his] lower leg is in pain daily." Dkt. No. 37 at ¶15; Dkt. No. 39-1 at 10. A non-defendant nurse responded the same day and informed the plaintiff that he was allowed the extra blanket "only when [he was] on medical obs[ervation] after ER visit." Dkt. No. 37 at ¶16; Dkt. No. 39-1 at 10. Nonetheless, two days later Dr. Godiwalla entered an order allowing the plaintiff an extra blanket for the remainder of his stay at Dodge County. Dkt. No. 37 at ¶17; Dkt. No. 39-1 at 11.

On November 21, 2019, one day after his interaction with the officer defendants detailed above, the plaintiff submitted a sick-call request to the HSU requesting a second mattress because the officers had taken the extra one from his cell. Dkt. No. 37 at ¶18; Dkt. No. 39-1 at 13. A non-defendant nurse

responded the same day and denied his request "based on Medical Department protocol." Dkt. No. 37 at ¶18; Dkt. No. 39-1 at 13. Four days later, the plaintiff submitted a "Request for Health Care" stating that he was "experiencing excruciating pain in [his] back," migraines and "leg/toe pain from bad nerves." Dkt. No. 37 at ¶19; Dkt. No. 39-1 at 14. A non-defendant nurse responded the same day noting, "No evidence observed of [him] in excruciating pain. Sleeping thru [*sic*] night, normal posture[,] normal ambulation. No reports of distress or officers witnessing [him] in distress." Dkt. No. 37 at ¶20; Dkt. No. 39-1 at 14. The nurse denied the plaintiff's request for a second mattress. Dkt. No. 37 at ¶20; Dkt. No. 39-1 at 14.

On November 27, 2019, the plaintiff submitted another request for health care stating that his "back is in pain causing further substantial injury." Dkt. No. 37 at ¶21; Dkt. No. 39-1 at 15. He stated that he had six "damaged disc[s] in [his] back, the pain is unbearable." Dkt. No. 37 at ¶21; Dkt. No. 39-1 at 15. A non-defendant nurse responded two days later and asked the plaintiff if he wanted "to schedule an appt. w/the provider." Dkt. No. 37 at ¶22; Dkt. No. 39-1 at 15. The plaintiff responded on November 30, 2019, using another request for health care form, and stated he "would like to be seen" for his complaint provided in the previous request. Dkt. No. 39-1 at 16. A non-defendant nurse responded the next day that she would schedule the plaintiff for an appointment the following week. Dkt. No. 37 at ¶22; Dkt. No. 39-1 at 16.

On December 4, 2019, a non-defendant nurse practitioner saw the plaintiff for his complaints of back pain. Dkt. No. 37 at ¶23; Dkt. No. 39-1 at 17. She prescribed the plaintiff Indomethacin (used to treat arthritis and related pain) to

treat his pain and Duloxetine (an antidepressant used to treat nerve pain). Dkt.
No. 37 at ¶23; Dkt. No. 39-1 at 17. The nurse practitioner also instructed HSU
staff to obtain the plaintiff's past medical records from Advanced Pain
Management, the facility where he said he had received pain treatment, and to
follow up with the plaintiff in six weeks. Dkt. No. 37 at ¶24; Dkt. No. 39-1 at 17.
She typed a formal progress note for the plaintiff's medical file that detailed her
findings and treatment plan, which included educating the plaintiff on his
medications and back stretches he could do. Dkt. No. 37 at ¶27; Dkt. No. 39-1 at
18. On December 5, 2019, HSU staff faxed a request to Advanced Pain
Management for the plaintiff's relevant health records, including his past
diagnoses, treatment summaries and records for "continuity of care." Dkt. No. 37
at ¶28; Dkt. No. 39-1 at 19–20.

On December 9, 2019, the plaintiff submitted a request for treatment
noting that his "new pills [were] not working for [his] pain" and that he was
unable to sleep. Dkt. No. 37 at ¶29; Dkt. No. 39-1 at 21. A non-defendant nurse
responded the same day and explained that the provider had increased his
Indomethacin dose "as of today" and that the "Duloxetine effects take minimum of
3 weeks." Dkt. No. 37 at ¶30; Dkt. No. 39-1 at 21. She advised the plaintiff to
continue his stretches and exercises. Dkt. No. 37 at ¶30; Dkt. No. 39-1 at 21. On
December 10, 2019, the nurse practitioner documented the increased dosage of
the plaintiff's Indomethacin. Dkt. No. 37 at ¶25; Dkt. No. 39-1 at 17.

On December 18, 2019, the plaintiff submitted another HSU request noting
that his medication still was not working, stating that he remained in pain and
unable to sleep and complaining that his "[b]ed is to[o] thin and is causes [*sic*]

excruciating pain in [his] back still." Dkt. No. 37 at ¶31; Dkt. No. 39-1 at 22. A non-defendant nurse responded and again informed the plaintiff that the "medications take time to work." Dkt. No. 37 at ¶32; Dkt. No. 39-1 at 22. The plaintiff submitted additional requests on December 21 and 23, 2019, asking for an update on his medical records, reiterating his complaints of pain and again requesting a second mattress. Dkt. No. 37 at ¶33; Dkt. No. 39-1 at 23–24. Non-defendant nurses responded to these requests the same days the plaintiff submitted them and informed him that because the HSU had not yet received his outside medical records, they could not issue him a second mattress. Dkt. No. 37 at ¶34; Dkt. No. 39-1 at 23–24. The response from December 21, 2019 asked the plaintiff if he wanted "to be put on the list to see MD." Dkt. No. 37 at ¶34; Dkt. No. 39-1 at 24. The plaintiff responded with additional requests on December 26–29, 2019, each of which reiterated his complaints of pain, assertions that his medication was not helping and requests for a second or better mattress. Dkt. No. 37 at ¶35; Dkt. No. 39-1 at 25–28. A non-defendant nurse responded on December 26, 2019, that she "[would] consult doctor." Dkt. No. 39-1 at 25. The other responses noted that the plaintiff's records had been requested but not yet received and referred to his December 30, 2019 appointment. Id. at 26–28.

On December 30, 2019, Dr. Godiwalla saw the plaintiff about his complaints of pain and requests for a second mattress. Dkt. No. 37 at ¶36; Dkt. No. 39-1 at 29. Dr. Godiwalla checked and recorded the plaintiff's vitals, which were all within normal ranges. Dkt. No. 37 at ¶37; Dkt. No. 39-1 at 29. She discussed the plaintiff's complaints about his medication and desire for a second mattress. Dkt. No. 37 at ¶38; Dkt. No. 39-1 at 29. Dr. Godiwalla did not believe

the plaintiff needed a second mattress because he had no history of back surgery or operations. Dkt. No. 37 at ¶39; Dkt. No. 39-1 at 29. The plaintiff told Dr. Godiwalla that he "[didn't] want the" prescribed Indomethacin and Duloxetine or Naproxen that had been prescribed earlier. Dkt. No. 37 at ¶40; Dkt. No. 39-1 at 29. Dr. Godiwalla therefore discontinued the plaintiff's medications, and she entered a treatment plan recommending the plaintiff move and walk more frequently and watch his weight. Dkt. No. 37 at ¶41; Dkt. No. 39-1 at 29. She also noted that the HSU had not received the plaintiff's records from Advanced Pain Management. Dkt. No. 37 at ¶42; Dkt. No. 39-1 at 29.

On January 6, 2020, the HSU received the plaintiff's records from Advanced Pain Management. Dkt. No. 37 at ¶43; Dkt. No. 39-1 at 30–39. These records detail the plaintiff's complaints of pain in his back, neck, arms and legs and treatment with non-opioid pain medications. Dkt. No. 37 at ¶44; Dkt. No. 39-1 at 30–34. His previous physician noted the plaintiff was "not a candidate for opioid pain management." Dkt. No. 37 at ¶44; Dkt. No. 39-1 at 30 (capitalization omitted). The same day, Nurse Tammy approved the plaintiff's request for a second mattress beginning January 6, 2020 and continuing until his release from Dodge County. Dkt. No. 37 at ¶45; Dkt. No. 39-1 at 40.

## II. Discussion

### A. Summary Judgment Standard

A party is entitled to summary judgment if the movant shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are those that "might affect

the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. Brummett v. Sinclair Broad. Grp., Inc., 414 F.3d 686, 692 (7th Cir. 2005).

B.  Analysis – Officer Defendants

The events in the complaint occurred in November and December 2019. As noted, the plaintiff pled guilty to one federal count on December 13, 2019, but he was not sentenced on that count until September 17, 2021. That means that, at the time of these events, the plaintiff was convicted but was not yet sentenced to imprisonment. Therefore, his claims do not arise under the Eighth Amendment, which applies only to convicted and sentenced incarcerated persons. See Lewis v. Downey, 581 F.3d 467, 474 (7th Cir. 2009) (citing Ingraham v. Wright, 430 U.S. 651, 671 n.40 (1977), and Graham v. Connor, 490 U.S. 386, 394 (1989)); see also Anderson v. Gutschenritter, 836 F.2d 346, 348 (7th Cir. 1988) ("The Eighth Amendment . . . is applicable only to those criminals who are serving a sentence."); Bailey v. Andrews, 811 F.2d 366, 373 (7th Cir. 1987) (same).

Because the plaintiff was not yet a sentenced incarcerated person at the time of the alleged events, the court analyzes his claims as if he were a pretrial

detainee. See Lewis, 581 F.3d at 474. Therefore, his claim that the officers intentionally removed his second mattress arises under the Fourteenth Amendment. See Hardeman v. Curran, 933 F.3d 816, 821–22 (7th Cir. 2019) (citing Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015)). Under the Fourteenth Amendment, the plaintiff must show that the officers acted "with purposeful, knowing, or reckless disregard of the consequences" of their actions. Miranda v. Cty. of Lake, 900 F.3d 335, 354 (7th Cir. 2018). It is not enough to show they acted with negligence or even gross negligence. See Williams v. Ortiz, 937 F.3d 936, 942 (7th Cir. 2019) (citing McCann v. Ogle Cty., 909 F.3d 881, 886 (7th Cir. 2018)). The court must "focus on the totality of facts and circumstances" that the defendants faced and "gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable." Id.

The undisputed facts show that the officers saw that the plaintiff had a second mattress in his cell but were unaware of a medical authorization allowing him the mattress. The officers spoke with the plaintiff about the mattress, then reviewed the jail management system to see if he had a medical authorization for the second mattress. When the jail management system did not show a medical authorization for a second mattress, the officers confirmed with medical personnel that the plaintiff did not have authorization for it. Both the management system and medical personnel noted that the plaintiff was allowed only a second blanket, not a second mattress. The officers removed the plaintiff's second mattress only after checking the management system and confirming with medical personnel that he had no medical authorization for the second mattress. They both swear, and the plaintiff does not dispute, that they did not remove the

15

mattress knowing it would cause the plaintiff harm or with the intent of causing him harm.

Non-medical prison personnel generally are entitled to "rely on the expertise of medical personnel" and are "justified in believing that the prisoner is in capable hands." Arnett v. Webster, 658 F.3d 742, 755 (7th Cir. 2011) (citing Greeno v. Daley, 414 F.3d 645, 656 (7th Cir. 2005)). Only when a nonmedical official ignores an inmate's complaints or has sufficient notice of "an excessive risk to inmate health or safety" can he be found deliberately indifferent for his actions or inaction. Id.; see Berry v. Peterman, 604 F.3d 435, 440 (7th Cir. 2010) ("As a nonmedical administrator, [the defendant] was entitled to defer to the judgment of jail health professionals so long as he did not ignore [the inmate]."). The officers swear they had no reason to believe that the plaintiff had a medical need for the second mattress. They relied on the jail management system and the word of medical personnel that the plaintiff had no such authorization. Because there is no evidence that the plaintiff was approved for or required the second mattress at that time, the officers had no reason to question medical personnel's assessment that the plaintiff did not have a medical authorization for a second mattress.

The undisputed facts show the officers did not act unreasonably in removing the plaintiff's second mattress. The evidence shows they reviewed the jail management system for a medical authorization for the second mattress and, finding none, confirmed those findings with jail medical personnel. The officers reasonably relied on that information in determining that the plaintiff did not have authorization for the second mattress and removing it. On this record, no reasonable jury could conclude that the officers' actions were objectively

16

unreasonable or that they were deliberately indifferent to the plaintiff's medical issue. The officers are entitled to judgment as a matter of law.

C.     Analysis – Medical Defendants

The plaintiff's claim that he was denied adequate medical care also arises under the Fourteenth Amendment because he had not yet been sentenced at the time of the alleged events. Miranda, 900 F.3d at 352; Lewis, 581 F.3d at 474. Under the applicable standard, as noted above, the plaintiff must show that the medical defendants acted "with purposeful, knowing, or reckless disregard of the consequences" of their actions. Miranda, 900 F.3d at 354. It is not enough to show they acted negligently or even grossly negligent. Pittman by & through Hamilton v. Cty. of Madison, Ill., 970 F.3d 823, 828 (7th Cir. 2020) (citing Miranda, 900 F.3d at 353). Evidence of "dissatisfaction or disagreement with a doctor's course of treatment" also is insufficient to sustain a claim of deliberate indifference. West v. Matz, No. 17-C-1262, 2017 WL 6805628, at *1 (E.D. Wis. Nov. 7, 2017) (citing Johnson v. Doughty, 433 F.3d 1001, 1013 (7th Cir. 2006)), aff'd, 740 F. App'x 103 (7th Cir. 2018)). The medical defendants assume for purposes of their motion that the plaintiff's pain constituted a serious medical need. Dkt. No. 38 at 8. The plaintiff must show that the care provided to address that serious medical need was objectively unreasonable. Miranda, 900 F.3d at 352 (citing Kingsley, 576 U.S. 389). He does not need to show that the medical defendants were subjectively aware that the treatment was unreasonable. Id.

Most of the plaintiff's medical care was provided by nurses and nurse practitioners who are not defendants in this lawsuit. The plaintiff's undisputed medical records show that those medical professionals provided consistent care

17

for and attention to the plaintiff's complaints. Although the plaintiff disclosed his existing injury on his Medical History form at booking, he did not state that he was taking any pain medications or that he'd previously been allowed a second mattress for his injury. HSU staff provided the plaintiff a lower-bunk restriction to accommodate his injury. A nurse practitioner later examined the plaintiff in response to his complaints of pain, prescribed pain medications and advised him to stretch and exercise more. When those treatments proved unsuccessful, and the plaintiff complained about delays in efficacy and side effects from the medications, Dr. Godiwalla discontinued the prescriptions and began a new treatment plan. Although non-defendant staff denied the plaintiff's repeated requests for a second mattress, they did so because they did not yet have his past medical records showing a need for a second mattress. Even if those medical providers were defendants in this lawsuit, there are no facts suggesting their treatment decisions were unreasonable.

The undisputed facts show the medical defendants did not provide objectively unreasonable treatment. The plaintiff's complaints regarding the treatment the medical defendants provided amount to a disagreement with his course of treatment. But that disagreement alone does not mean the medical defendants' treatment plan was unreasonable. Dr. Godiwalla denied the plaintiff's request for a second mattress because the plaintiff had no history of back surgery and because she did not have his outside records by the time of the December 30, 2019 appointment with him. Nothing in the plaintiff's disclosed medical history supported his request for a second mattress. In response to his October 14, 2019 request, Dr. Godiwalla did allow the plaintiff a second blanket for the remainder

of his stay at Dodge County. The evidence does not show that she declined his request for a second mattress "with purposeful, knowing, or reckless disregard of the consequences" of that decision. Instead, the evidence shows she treated the plaintiff based on his complaints and the information available to her at the time.

On January 6, 2020, the same day the HSU received the plaintiff's outside medical records, Nurse Tammy approved the plaintiff's request for a second mattress until his release from Dodge County. Dkt. No. 39-1 at 40. There is no evidence that Nurse Tammy had any other involvement in the plaintiff's medical care between November 2019 and January 2020. Even if either medical defendant could have provided the second mattress sooner, there is no evidence that their decision not to do so and to wait for the plaintiff's outside medical records was unreasonable. Even if their decision was negligent or suboptimal—and there is no evidence it was—that would not be enough to allow a reasonable jury to conclude that the medical defendants were deliberately indifferent to the plaintiff's pain. See Miranda, 900 F.3d at 346 (holding that negligence is "not enough to establish that [defendant sheriff] was deliberately indifferent to detainees' rights").

The plaintiff's complaint also alleged that Nurse Tammy held his sick-call requests in her office and told the plaintiff he complained too much. Dkt. No. 8 at 5–6, 10 (citing Dkt. No. 1 at 4–5). There is no evidence supporting those allegations. The plaintiff's HSU records contain his requests from numerous days in November and December 2019. HSU staff responded to each of those requests, often the same day. There is no evidence that Nurse Tammy (or any HSU staff) withheld the plaintiff's complaints or told him he complained too much. The unsupported allegations in the plaintiff's complaint are insufficient to counter the

19

defendants' undisputed facts and the plaintiff's undisputed medical records and cannot defeat the defendants' motion for summary judgment. See Nelson v. Stevens, 861 F. App'x 667, 670 (7th Cir. 2021) (quoting Beardsall v. CVS Pharmacy, Inc., 953 F.3d 969, 972 (7th Cir. 2020), and citing Celotex, 477 U.S. at 322–23) (explaining that at summary judgment, a party "'must go beyond the pleadings and support its contentions with proper documentary evidence'").

On this record, no reasonable jury could conclude that the medical defendants provided objectively unreasonable medical care, ignored the plaintiff's requests for medical attention or were otherwise deliberately indifferent to his pain. The medical defendants are entitled to judgement as a matter of law.

Because the court is granting summary judgment to all defendants on the merits, there is no need for the court to determine whether they are entitled to qualified immunity. See Sierra-Lopez v. County, No. 17-CV-1222, 2019 WL 3501540, at *10 (E.D. Wis. July 31, 2019) (citing Viero v. Bufano, 925 F. Supp. 1374, 1387 (N.D. Ill. 1996); and Antepenko v. Domrois, No. 17-CV-1211, 2018 WL 6065347, at *6 (E.D. Wis. Nov. 20, 2018)).

## III.   Conclusion

The court **GRANTS** the defendants' motions for summary judgment. Dkt. Nos. 29, 36.

The court **DENIES AS MOOT** the defendants' motion to consider their motion for summary judgment unopposed or, in the alternative, to dismiss for failure to prosecute. Dkt. No. 50.

The court **ORDERS** that this case is **DISMISSED**. The clerk will enter judgment accordingly.

20

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 31st day of May, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**